UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MIKE SETTLE, )<br>a/k/a MICHAEL COLE, )<br>      )<br>    Plaintiff, )<br>      )<br>VS. )<br>      )<br>UNITED STATES POSTAL OFFICE, et. al, )<br>      )<br>    Defendants. ) | No. 14-cv-2559-JDT-tmp |

ORDER DISMISSING CLAIMS,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On July 21, 2014, Plaintiff Mike Settle ("Settle"), who is currently an inmate at Riverbend Prison in Nashville, TN, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 addressing conditions during his previous incarceration at West Tennessee State Penitentiary ("WTSP") in Henning Tennessee and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued July 22, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) In an order issued October 31, 3014, the Court granted Settle's Motion to Amend. (ECF No. 8.) The Clerk shall record the defendants as United States Postal Service ("USPS"), E. Douglas Varney ("Varney") and Melvin Ewell ("Ewell").[1]

---

[1] The Clerk is directed to add Defendants E Douglas Varney and Melvin Ewell who were added in Settle's Motion for Leave to File and Amend (ECF No. 6.) which was granted by this court on October 31, 2014. (ECF No. 8.)

## I. THE COMPLAINT & AMENDED COMPLAINT

Settle's original complaint addresses his claims against the USPS. Settle alleges that the USPS "intentionally failed to deliver his mail which was returned to him as 'Return to Sender Insufficient Address, Unable to Forward.'" (Compl. 3, ECF No. 1.) Settle contends that the address was sufficient and the failure to deliver was intentional. (*Id.*) As a result of the failure to deliver the mail, Settle alleges he was denied access to the courts violating the First and Fourteenth Amendments. (*Id.* at 6.) Settle alleges that on July 31, 2014, Defendant Ewell denied Settle's request for voluntary admission and transfer to Western Mental Health Institute ("WMHI"). (Compl. 2, ECF No. 6.) Sewell also alleges that Ewell forwarded his request to the Tennessee Department of Corrections ("TDOC") Commissioner Schofield in violation of Settle's "right to privacy in medical information." (*Id.*) Similarly, Settle alleges that in August of 2014, Defendant Varney denied his request for voluntary transfer to "WMHI," and Varney forwarded a copy of his request to TDOC Commissioner Schofield, which, "violated right to privacy in medical information." (*Id.* at 6.)

Settle is asking the court to immediately arrange to have court addresses listed and legal mail screened to ensure it gets mailed to the courts as well as punitive and compensatory damages against the USPS. (Compl. 9-10), ECF No. 1.) Settle seeks compensatory and punitive damages against Defendants Ewell and Varney. (Compl. 6-7, ECF No. 6.)

## II. ANALYSIS

A.  Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory,

> but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that

responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.      § 1983 Claim

Settle filed his ten-page handwritten complaint, followed by his seven-page handwritten amended complaint, pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 & 6.) Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or **immunities** secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

   1.      *Defendant USPS*

The allegations against the USPS fail to state a claim against a defendant acting under the color of state law. The USPS is a federal agency of the United States Government pursuant to 39 U.S.C. § 101. Neither the United States Government, nor the various federal agencies can be sued under § 1983 because they do not act under color of state law. *Franklin v. Henderson*, No. 00-4611, 2000 WL 861697, at *1 (6th Cir. June 20, 2001) ("The federal government and its officials are not subject to suit under 42 U.S.C. § 1983."); *Habtemariam v. Adrian*, No. 98-3112, 1999 WL 455326, at *2 (6th Cir. June 23, 1999); *Johnson v. Ionia United States Postal Serv.*,

5

Nos. 90-1078, 90-1313, 1990 WL 115930, at *1 (6th Cir. Aug. 10, 1990); *Walber v. United States Dep't of Housing & Urban Dev.*, No. 88-1984, 1990 WL 19665, at *2 (6th Cir. Mar. 5, 1990); *Nghiem v. U.S. Dep't of Veterans Affairs*, 451 F. Supp.2d 599, 604-05 (S.D.N.Y. 2006); *Rackham v. Department of Veterans Affairs*, No. Civ.A. 7:03CV00574, 2004 WL 385026, at *1 (W.D. Va. Mar. 1, 2004).

    2.    *Due Process Claim for Reclassification against Defendants Varney and Ewell*

Settle's claims against Defendants Varney and Ewell are for their refusal to transfer Settle to a mental health institution. In general, an inmate does not have a liberty interest in a particular security classification or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986).

In *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974), the Supreme Court identified the procedural requirements prison officials must adopt to satisfy due process when depriving a prisoner of various liberty interests, including deprivation of sentence credits and confinement to segregation. In *Hewitt v. Helms*, 459 U.S. 460, 472 (1983), the Court limited the *Wolff* requirements applicable to purely administrative, rather than punitive segregation, but broadened the scope of federal court authority over prison administration by recognizing that the mandatory language of state regulations could create liberty interests protected by due process requirements. Courts were required to consider whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal government] has created a protected liberty interest." *Hewitt*, 459 U.S. at 472. *Sandin v. Conner*, 515 U.S. 472, 484-87 (1995), however, rejected *Hewitt*, and much of the lower-court

6

jurisprudence that relied on *Wolff*. Without explicitly overruling *Hewitt* itself, *Sandin* returned to the question left open in *Wolff*, 418 U.S. at 564-71: whether inmates have a liberty interest in freedom from segregation, punitive or administrative. The Court rejected *Hewitt's* methodology and concluded that they do not.

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen*, 482 U.S. 369 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., *Vitek[ v. Jones*, 445 U.S. 480,] 493 [(1980)](transfer to mental hospital), and *Washington[ v. Harper*, 494 U.S. 210,] 221-222 [(1990)](involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.
>
> *Conner* asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Neither *Bell v. Wolfish*, 441 U.S. 520 (1979), nor *Ingraham v. Wright*, 430 U.S. 651 (1977), requires such a rule. . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. . . ..

*Sandin*, 515 U.S. at 483-84, 486, 487 (footnotes and some citations omitted).

*Sandin* thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. *Id*. at 481. Absent "atypical and significant hardship," a change in the conditions of confinement does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* at 484-86. Thus language in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause. *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Rather, when analyzing due process claims, federal courts do not look to state laws or regulations to ascertain whether they create a liberty interest in the imposition of disciplinary

7

penalties or reclassifications. Neither do the courts consider the subjective motives of prison officials. Instead, the courts focus on the nature of the deprivation itself.

After *Sandin*, prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest only in "freedom[s] from restraint . . . impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S. Ct. at 2294. *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). According to *Orellana*, only deprivations that clearly impinge on the duration of confinement, will henceforth even possibly qualify for constitutional "liberty" status. *Id*. at 31-32.

Defendants' refusals to reclassify Settle do not create any atypical and significant hardship; he has failed to allege the deprivation of a federally recognized liberty interest and is not entitled to any of the procedural protections enunciated in *Wolff* or its progeny. He has no due process claim for his assignment to a mental institution.

Furthermore, Setttle asserts no claim of harm due to his assignment at WTSP. His claims can best be interpreted as mental anguish. Any claims of mental stress and anguish that are non-cognizable under 42 U.S.C. § 1997e(e): "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Settle does not allege any such harm.

    3.    *Right to Privacy of Medical Information*

A plaintiff alleging a violation of his right to informational privacy must demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Bloch v. Ribar,* 156 F.3d 673, 684 (6th Cir.1998) (quoting

*DeSanti,* 653 F.2d at 1090). Only after a fundamental right is identified should the court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1061 (6th Cir.1998). Applying those standards, the Sixth Circuit has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, *see Kallstrom,* 136 F.3d at 1061; and (2) where the information released was of a sexual, personal, and humiliating nature, *see Bloch,* 156 F.3d at 684; *see also Lambert,* 517 F.3d at 440 (same).

With respect to disclosure of medical information, the Sixth Circuit stated that it has "not yet confronted circumstances . . . that, in [its] view, are tantamount to a breach of a 'fundamental liberty interest' under the Constitution." *Lee,* 636 F.3d at 261. In *Lee,* the court considered a policy requiring city employees to disclose the nature of their illness after taking sick leave. *Id.* at 248. The court upheld the policy, noting that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom,* or the interest in shielding sexuality and choices about sex, protected in *Bloch.*" *Id.* at 261. Likewise, Settle does not allege that the disclosure of his medical information subjected him to a risk of harm, as in *Kallstrom,* nor does he allege that the information disclosed was of a sexual or intimate nature, as in *Bloch.*

In a case involving prisoner medical information, the Sixth Circuit held that an inmate's constitutional right to privacy was not violated when a prison corrections officer learned from the inmate's medical records that he was HIV positive. *Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994). *But see Moore v. Prevo,* 379 F. App'x 425, 428 (6th Cir.2010) (distinguishing *Wigginton* and holding that an inmate had a constitutional privacy interest in guarding against disclosure of his HIV-positive status to other inmates, subject to legitimate penological interests).

Settle's complaint that his request for admission into a medical hospital was forwarded to TDOC Commissioner Schofield does not rise to a constitutional claim merely because he would prefer to keep that information private. To state a Fourteenth Amendment claim, he must allege facts indicating that Defendants' conduct implicated a fundamental right. Because the disclosure of Settle's confidential medical information did not violate the federal constitution, he has failed to state a claim upon which § 1983 relief can be granted.

## III. STANDARD FOR LEAVE TO AMEND

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

## IV. APPEAL ISSUES

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

## V. CONCLUSION

The Court DISMISSES Settle's complaint as to all Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to Amend is DENIED because the deficiencies in Settle's complaint cannot be cured. It is also CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying

11

the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Settle, this is the third dismissal[2] of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

            **s/James D. Todd**
            JAMES D. TODD
            UNITED STATES DISTRICT JUDGE

---

[2] *See Settle v. Tennessee Department of Corrections, et al.*, No. 11-00567-TWP-hbg (E.D. Tenn.), which was dismissed for failure to state a claim on April 18, 2012*;* and *Cole (a.k.a. Settle) v. Corrections Corporation of America, et al.*, No. 10-01303_JDT-egb (W.D. Tenn.), which was dismissed for failure to state a claim on August 26, 2011.